¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May a fire department composed in whole or in part of volunteersrespond or self-deploy its personnel to a fire or other emergencyinvolving the protection of life or property without a 911 page forassistance or a request for assistance from a law enforcement official?
 2. Do incidents that involve hazardous material spills (fuel, oil,coolant, etc.) resulting from a motor vehicle accident constitute anadequate reason for a fire department to respond, even where there areno injuries?
 3. Is the fire department or the law enforcement official(s) in chargeat an emergency involving the protection of property or life?
¶ 1 Oklahoma statutes allow fire departments, composed in whole or in part of volunteers, to be created by a variety of statutory mechanisms and local jurisdictions.[1] In our analysis we will compare and contrast the relevant provisions relating to the different jurisdictions
 I. May a Fire Department Composed in Whole or in Part of VolunteersRespond or Self-deploy its Personnel to a Fire or Other EmergencyInvolving the Protection of Life or Property Without a 911 Page forAssistance or a Request for Assistance from a Law Enforcement Official?
¶ 2 You first ask whether a fire department composed of volunteers has the right to respond or self-deploy to a fire or other emergency. We begin our analysis in Title 11 of the Oklahoma Statutes: "[T]he purpose of the Oklahoma Volunteer Firefighters Act, Sections 29-201 through 29-205 of this title, is to provide for a uniform system of fire protection for the lives and property of the people of Oklahoma." 11 O.S. 2001, § 29-201[11-29-201].
¶ 3 Oklahoma statutes require all volunteer firefighters to respond to alarms of fire and other emergencies when notified.
 Any municipality which has volunteers enrolled as members of the fire department shall adopt by ordinance a code of minimum rules and regulations in substantial compliance with the following:
 . . . .
 Article 6. Bylaws.
 The bylaws of the department shall include but shall not be limited to the following:
 (a) All volunteer firefighters are required to respond to alarms of fire and other emergencies when notified.
11 O.S. 2001, § 29-204[11-29-204].
¶ 4 Volunteer firefighters respond to alarms of fire and other emergencies by deploying or self-deploying to these emergencies, depending upon how they are notified of the emergencies.[2]
Municipalities that utilize volunteers must enact ordinances that provide the minimum rules and regulations for their volunteer firefighters. Id.
§ 29-204. Thus, municipalities may prescribe by ordinance the situations to which volunteer fire departments may deploy or self-deploy.
¶ 5 While a county may create a county fire department by creating a district with distinct boundaries, the department is governed by a board of directors. 19 O.S. 2001, § 351[19-351](D)(1), (3). After establishing the district and appointing the board of directors, bylaws of the department are passed. Id. § 351(D)(7)(f). State statutes require the bylaws to include the same requirement for firefighters to respond to fire alarms and other emergencies when notified. Id. Title 19, Section 351(D)(7)(f) states in relevant part:
 The bylaws of the department shall include:
 (1) All volunteer firefighters are required, when notified, to respond to fire alarms and other emergencies.
Id.
¶ 6 Under 18 O.S. 2001, § 592[18-592], a fire department may be formed as a charitable corporation. This type of fire department may be created to provide volunteer or full-time firefighting services, but there are no specific powers to respond to particular emergencies.[3] Id. § 593(A).
 [G]enerally, an officer or agency has, by implication and in addition to the powers expressly given by Constitution or statute, such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the constitutional provision or statute granting the express powers.
Okla. Pub. Employees Ass'n v. Okla. Dep't of Cent.Serv., 55 P.3d 1072, 1084 (Okla. 2002). Fire departments and, therefore, volunteer firefighters have not only the explicit powers established by the Legislature but also the powers necessary and implied to efficiently carry out their statutory duties.
¶ 7 For the chief of the fire department or other fire department personnel, there is no statutory requirement that they be notified in any specific manner, such as a 911 call. When the chief learns of an emergency to which it is appropriate for the department to respond, the chief, based upon the department's necessary and implied powers to protect the public and the chief's discretion, may order the firefighters to respond.
¶ 8 Thus, volunteer firefighters are required to respond to alarms of fire and other emergencies when notified. Fire departments composed of volunteer firefighters respond to alarms of fire and other emergencies by deploying or self-deploying to these emergencies, depending upon how they are notified. The form of notification is not controlling. It does not matter whether notification is made by a direct call to the fire department, a 911 call, a request from law enforcement authorities or any other means.
 II. Are Incidents that Involve Hazardous Material Spills(Fuel, Oil, Coolant, etc.), Resulting from a MotorVehicle Accident, an Adequate Reason for Volunteer FireFighters to Respond, Even Where There are no Injuries?
¶ 9 Since we have already determined that all volunteer firefighters are required, when notified, to respond to fire alarms and other emergencies, and that the fire departments respond to such emergencies through their firefighters, we next look at whether volunteer firefighters may respond to situations such as hazardous material spills (fuel, oil, coolant, etc.) resulting from motor vehicle collisions.
¶ 10 The above statutes require volunteer firefighters to respond to fire alarms and "other emergencies." No definition is found as to what other emergencies were contemplated by the Legislature in these statutes. The words of a statute must be given their plain and ordinary meaning, unless a contrary intention plainly appears. 25 O.S. 2001, § 1[25-1]. Accordingly, we must look to the plain and ordinary meaning of the term. Webster's Third New InternationalDictionary defines "emergency" as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Id. at 741.
¶ 11 Thus, volunteer firefighters may respond to "other emergencies," those unforeseen combinations of circumstances or the resulting state that calls for immediate action. Since "other emergencies" are not specifically defined by Oklahoma law, decisions on which situations call for immediate action by a fire department are fact driven. Fire departments may respond to certain emergencies because of special or unique training or instruction they have received. When to deploy to a non-fire emergency is a matter of discretion of the fire chief and application of common sense. Whether incidents that involve motor vehicle collision hazardous material spills (fuel, oil, coolant, etc.) constitute an emergency and are an adequate reason to respond even if there are no injuries, is a question of fact that cannot be answered as a matter of law in an Attorney General Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5).
 III. Who is in Charge at the Scene of anEmergency: the Fire Chief or Other Law EnforcementAuthorities?
¶ 12 You last ask who is in charge at the scene of an emergency: the fire chief, or other law enforcement authorities? We will next compare emergency scenes and discuss fire emergencies, non-fire emergencies and the entity in charge of various emergencies for which authorities may be called upon to respond.
A. Fire Emergencies
¶ 13 Provisions of the earlier-cited Oklahoma Statutes from Titles 11 and 19 require the fire chief to make every effort to attend all fires and command the chief to direct the officers and members of the fire department in the performance of their duties. 11 O.S. 2001, § 29-204(art. 1)(e). A similar provision is found for volunteer fire departments organized under county auspices. 19 O.S. 2001, § 351[19-351](D)(7)(a)(5).
B. Non-Fire Emergencies
¶ 14 Originally passed in 1993, the Oklahoma Emergency Response Act ("Act"), 27A O.S. 2001, §§ 4-1-101[27A-4-1-101] — 4-2-105, seeks to "[p]rovide a rapid, coordinated and effective network for response todangerous substances incidents or events necessary to protect the public health and safety and the environment of this state, and to preserve property[.]" Id. § 4-1-101(B)(1) (emphasis added). Additionally, the Act defines the lead official at such scene as, "the person designated by the contact agency to be the official in charge of the on-site management of the emergency[.]"Id. § 4-1-102(2). For incidents under the Act, the lead official may be designated by the fire department or the Oklahoma Highway Patrol depending on the location of the emergency. Id. § 4-1-102(9). The Act clarifies that for an incident inside the corporate municipal limits, the contact agency is the municipal fire department. Id. § 4-1-102(9)(a). "Outside [the] corporate . . . limits on private property," the contact agency is the closest municipal fire department. Id. § 4-1-102(9)(b). "Outside [the] corporate limits . . . on federal/state highway, public property, county road, or a railroad[,]" the contact agency is the Oklahoma Highway Patrol. Id. § 4-1-102(9)(c). Therefore, the contact agency that is designated the lead official is based upon the location of the emergency. Id. § 4-1-102(9).
¶ 15 Thus, for dangerous substance incidents and events necessary to protect the public health and safety and the environment, and to preserve property, the location of the incident determines the entity that has the lead responsibility. Id. However, to coordinate these efforts, the Act discusses first responders and the interaction with those who have the lead responsibility. See id. § 4-1-103.
¶ 16 "First responder" is defined as "the first person to arrive at the scene of an incident involving the release of a dangerous substance who has the authority by virtue of that person's position as a local law enforcement officer, peace officer, fire protection officer or Oklahoma Highway Patrol Officer or other law enforcement officer[.]" Id. § 4-1-102(8). The Act provides the duty and authority of first responders to such scenes and describes the cooperation required until the lead official arrives or until the incident is stabilized. The first responder's duties include:
 A. For incidents or events involving releases of dangerous substances requiring protective actions, the first responder shall be responsible for initial evaluation of the incident and implementation of protective action measures.
 B. As soon as reasonably possible after arriving at the scene of the incident, the first responder shall notify the lead official to respond to such an incident pursuant to subsection C of this section. The first responder shall maintain such authority to implement protective action measures until the lead official arrives or until the incident is stabilized.
Id § 4-1-103 (emphasis added).
C. Applicability of the 2003 National Fire Code
¶ 17 In your letter you referenced provisions of the 2003 National Fire Code ("Code").[4] While that Code was adopted into the Oklahoma Administrative Code at OAC580:20-5-4(1), the Code was adopted for purposes of construction standards with the adopting state agency having no statutory authority to determine firefighting jurisdiction. Thus, the provisions in the Code, as they relate to firefighting responsibilities, are more general in nature and do not overrule or contradict more specific statutory authority on firefighting responsibilities.
D. Conclusion
¶ 18 In an emergency or a situation in which the fire department is called because of its special training and in the absence of other controlling law, it is necessary and implied that the fire department will be in charge of the scene. Thus, the fire chief is in charge at a fire emergency involving the protection of property or life. Police and other enforcement agencies, including county sheriffs, shall have authority to render necessary assistance in the investigation of fires when requested to do so. For a non-fire emergency the volunteer fire department may respond, but is not in charge of the scene.
¶ 19 For incidents involving releases of dangerous substances, the first entity responding has the authority and duty to "maintain such authority to implement protective action measures until the lead official arrives or until the incident is stabilized." 27A O.S. 2001, § 4-1-103[27A-4-1-103](B).
¶ 20 The lead official for dangerous substances incidents as outlined in the Act may be from the fire department or the Oklahoma Highway Patrol, depending on the location of the emergency. See id. § 4-1-102(9). Thus, the location of the non-fire dangerous substances incident determines which entity has the lead responsibility for those emergencies.
¶ 21 It is, therefore, the official Opinion of theAttorney General that:
 1. A fire department composed in whole or in part of volunteer firefighters is required to respond to alarms of fire and other emergencies when notified. 11 O.S. 2001, § 29-204[11-29-204] (art. 6)(a); 11 O.S. Supp.2006, § 29-303 (1). Volunteer firefighters respond to alarms of fire and other emergencies by the volunteer fire departments deploying or self-deploying to these emergencies. Id. The form of notification is not controlling and includes, but is not limited to, notification made by a direct call to the fire department, a 911 call, a request from law enforcement authorities or other means. Id.
 2. Incidents that involve hazardous material spills (fuel, oil, coolant, etc.) resulting from a motor vehicle accident may constitute an adequate reason to respond, even where there are no injuries. 27A O.S. 2001, § 4-1-101[27A-4-1-101](B)(1). Whether a particular factual situation is an emergency such that a volunteer fire department is required to respond, is a question of fact which cannot be answered as a matter of law in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b] (A)(5).
 3. The fire chief is in charge at a fire emergency involving the protection of property or life. 11 O.S. 2001, § 29-204[11-29-204] (art. 1)(e); 19 O.S. 2001, § 351[19-351] (D)(7)(a)(5). For non-fire dangerous substances emergencies, what official is in charge at the scene is controlled by the location of the site of the emergency under the provisions of the Oklahoma Emergency Response Act, 27A O.S. 2001, §§ 4-1-101[ 27A-4-1-101] — 4-2-105. Id. § 4-1-102(9).
W.A. DREW EDMONDSON Attorney General of Oklahoma
GLEN D.HAMMONDS Assistant Attorney General
[1] Municipalities may utilize volunteer firefighters. See 11 O.S. 2001, § 29-204[11-29-204]. Combination fire departments are fire departments that have both salaried and volunteer firefighters. 11 O.S. Supp.2006, § 29-301(A)(1). Counties may utilize volunteer firefighters. 19 O.S. 2001, § 351.3[19-351.3]. Rural fire departments with volunteer firefighters may also be created under Oklahoma corporate laws. 19 O.S. 2001, § 351.3[19-351.3]; see 18 O.S. 2001, § 592[18-592].
[2] Combination fire departments have a similar statutory requirement involving the duty to respond to alarms of fire and other emergencies when notified. "Volunteer firefighters of a combination fire department shall: 1. Be required, when notified, to respond to alarms of fire and other emergencies[.]" 11 O.S. Supp.2006, § 29-303.
[3] Local fire departments may also cooperate through the use of interlocal agreements pursuant to the Interlocal Cooperation Act. 74 O.S. 2001, §§ 1001[74-1001], 1008(A).
[4] Letter from Mary Easley, Oklahoma State Senator, to Drew Edmondson, Oklahoma Attorney General (Oct. 27, 2006) (on file with the Oklahoma Attorney General's office).